OMNE FINANCIAL, INC v SHACKS, INC

Docket No. 190550. Submitted May 14, 1997, at Lansing. Decided November 14, 1997, at 9:35 A.M. Leave to appeal sought.

Omne Financial, Inc., brought an action in the Oakland Circuit Court against Shacks, Inc., and Lee Shacks, Jr., alleging that the corporate defendant had breached a lease and the individual defendant had breached a guaranty of the lease by failing to make the required payments under the lease and seeking damages and the return of the leased property. Defendant Shacks, Inc., entered into a lease with North American Interstate, Inc., whereby North American would supply certain equipment in return for fixed monthly payments. Defendant Lee Shacks, Jr., personally guaranteed the payments. The lease contained a provision whereby the lessee agreed that the venue of any action, suit, or proceeding arising out of the lease would be in the courts of Oakland County. The lease was assigned to plaintiff, which filed its suit in the Oakland Circuit Court pursuant to the provisions of the lease when the defendants failed to make the required payments under the lease. The defendants moved to change venue to Saginaw County on the ground that venue in Oakland County was improper. The court, Richard D. Kuhn, J., denied the motion for a change of venue on the basis that the parties' agreement concerning venue should be enforced. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. The establishment of venue is within the Legislature's power. The Legislature provided in MCL 600.1621; MSA 27A.1621 that venue, except with respect to certain specific types of actions, will lie in the county in which a defendant resides, has a place of business, or conducts business or, if a corporate defendant is involved, in the county in which the registered office of the corporate defendant is located. If none of the defendants meets one or more of those criteria, venue lies in the county in which a plaintiff resides or has a place of business of, if a corporate plaintiff, in the county of the registered office of the corporate plaintiff. The Legislature further provided in MCL 600.1605; MSA 27A.1605 that venue of an action to recover tangible personal property lies in the county that the subject property, or any part of it, is situated.

2. Although Michigan courts have enforced agreements in which parties have stipulated a proper venue in an agreement that was entered into after the cause of action had arisen, it would be inappropriate, even if it is assumed that the prior case law has continuous binding effect, to extend that court-made rule to enforcement of choice of venue provisions contained in agreements entered into before a cause of action arose. The fact that the Legislature established a rule that allows parties to consent to personal jurisdiction by contract, but made no similar provision with respect to venue, constrains the Court of Appeals from doing that which the Legislature has chosen not to do. The legislative scheme evidences a clear intent by the Legislature to control venue shopping, an intent that would be subverted if parties could by contract dictate the venue of any potential cause of action that might arise in the future. Accordingly, contractual provisions presuming to fix the venue of any future potential cause of action is not binding on Michigan courts.

3. Because any agreement that attempts to fix venue before a cause of action has arisen will not be enforced because such an agreement is in conflict with the clear intent of the Legislature, it would be improper to allow the legislatively unacceptable result to occur by treating such an agreement as a waiver of a party's right to challenge venue or as a party's consent to a change of venue.

4. To the extent that the trial court denied the motion for a change of venue on the basis that the venue provision of the contract was enforceable, it erred. On remand, the court must consider the motion for a change of venue in light of the statutes and court rules relating to venue and may consider the venue provision in the lease agreement only to the extent that the lease provision is relevant to the factors set forth in the statutes.

Reversed and remanded.

TAYLOR, J., dissenting, stated that because neither the statutes nor the court rules prohibit parties from contractually agreeing to a choice of venue and because enforcement of such a contractual choice of venue would in no way undermine the power of the Legislature with respect to the question of venue, the modern view that allows parties to choose the venue for the resolution of their disputes should be adopted, and the parties' agreement concerning the venue of any litigation arising under the lease in this case was properly given effect by the trial court.

VENUE — CHOICE OF VENUE — CONTRACTS.

A provision in a contract whereby the parties agree to the venue of any potential future causes of action that might arise between the parties is not enforceable, nor may such a provision be treated as a

waiver of a party's right to challenge venue or as a party's consent to a motion for a change of venue; proper venue of an action must be determined pursuant to the statutes and court rules relating to venue, with any contractual agreement concerning venue being considered only to the extent that it is relevant to the factors set forth in the venue statutes (MCL 600.1621; MSA 27A.1621).

*John D. Alli*, for the plaintiff.

*Henry G. Marsh*, for the defendants.

Before: NEFF, P.J., and WAHLS and TAYLOR, JJ.

WAHLS, J. This case presents us with the question whether a contractual agreement that seeks to establish the venue of potential causes of action that might accrue after the execution of the agreement is enforceable. We hold that it is not.

Pursuant to a lease, North American Interstate, Inc., was to provide defendant Shacks, Inc., with two jukeboxes and two pool tables in return for fixed monthly payments. The lease contained a provision dictating venue for any cause of action arising under the lease:

This lease shall not be effective until signed by the Lessor at our offices. This lease shall be construed to have been executed in the State of Michigan and shall be interpreted in accordance with the law and regulations of the State of Michigan. Lessee hereby agrees to jurisdiction in Michigan in the case of any action, suit or proceeding arising out of this lease *and venue shall be in the district court for the 45A Judicial District (if the damages involved are in excess of $10,000 then the circuit court for the county of Oakland)*. Lessee hereby acknowledges that Lessee has transacted business in the State of Michigan by entering into the lease, and that the jurisdiction, choice of law and venue provisions of this lease are specifically negotiated terms of this lease. (Emphasis added.)

Defendant Lee Shacks, Jr., personally guaranteed the payments. The lease was subsequently assigned to plaintiff.

Plaintiff filed suit in the Oakland Circuit Court alleging that defendants breached the lease agreement and guaranty by failing to make the required payments. Defendants then filed a motion to change venue on the ground that venue was improper in Oakland County. The trial court denied defendants' motion, and defendants now appeal by leave granted.

In Michigan, venue is controlled by statute. Plaintiff's suit included claims for contract damages and for return of the leased property.[1] The venue statute applicable to contract claims, MCL 600.1621; MSA 27A.1621,[2] reads:

> Except for actions provided for in sections 1605, 1611, 1615, and 1629, venue is determined as follows:
>
> (a) The county in which a defendant resides, has a place of business, or conducts business, or in which the registered office of a defendant corporation is located, is a proper county in which to commence and try an action.
>
> (b) If none of the defendants meet 1 or more of the criteria in subdivision (a), the county in which a plaintiff resides or has a place of business, or in which the registered office of a plaintiff corporation is located, is a proper county in which to commence and try an action.

---

[1] Apparently, plaintiff has recovered this property. However, because venue is determined at the time a suit is filed, venue may still be proper pursuant to the statute governing recovery of tangible personal property. See *Brown v Hillsdale Co Rd Comm*, 126 Mich App 72, 76-78; 337 NW2d 318 (1983).

[2] The language we quote is that of the statute as amended by 1995 PA 161, which took effect just after the suit in this case was filed. However, the amendments were essentially grammatical and did not change the substance of the statute.

(c) An action against a fiduciary appointed by court order shall be commenced in the county in which the fiduciary was appointed.

The venue statute applicable to the recovery of tangible personal property, MCL 600.1605; MSA 27A.1605, reads:

The county in which the subject of action, or any part thereof, is situated, is a proper county in which to commence and try the following actions:

(a) the recovery of real property, or of an estate or interests therein, or for the determination in any form of such right or interest;

(b) the partition of real property;

(c) the foreclosure of all liens or mortgages on real property; and

(d) the recovery of tangible personal property.

There is no statutory provision that specifically permits parties to agree contractually to any other venue.

No Michigan cases have directly addressed the question whether parties may contractually agree to the venue of potential causes of action that might arise after execution of the contract containing the venue provision. The few cases that touch on this issue at all suggest that, where there is an *existing* cause of action, parties may agree to venue. See *Garavaglia v Dep't of Revenue*, 338 Mich 467, 470; 61 NW2d 612 (1953); *Grand Trunk W R Co v Boyd*, 321 Mich 693, 699-700; 33 NW2d 120 (1948), rev'd on other grounds 338 US 263; 70 S Ct 26; 94 L Ed 55 (1949); *Nat'l Equipment Rental v Miller*, 73 Mich App 421,

425; 251 NW2d 611 (1977).[3] These cases do not address the question whether such agreements are enforceable where they conflict with the statutes and court rules regarding venue, nor do they address the question whether such agreements could act as a waiver of a party's right to challenge venue.

In order to determine whether contracts regarding venue are enforceable, we must interpret the statutes that control venue. Statutory interpretation is a question of law, which we review de novo. *Long v Chelsea Community Hosp*, 219 Mich App 578, 581-582; 557 NW2d 157 (1996). In interpreting statutes we must strive to effectuate the intent of the Legislature. *Id.* at 582. Because the venue statutes do not directly address the question whether parties may contractually agree to venue, we must look beyond the language of the statutes. We begin by exploring the purpose of the venue requirement.

Venue rules are not jurisdictional. MCL 600.1601; MSA 27A.1601. Jurisdiction deals with the power of a court to hear a class of cases or the authority of a court to bind the parties. *Grebner v Oakland Co Clerk*, 220 Mich App 513, 516; 560 NW2d 351 (1996); *People v Eaton*, 184 Mich App 649, 652-653; 459 NW2d 86 (1990), aff'd on other grounds 439 Mich 919 (1992); *Dogan v Michigan Basic Property Ins Ass'n*, 130 Mich App 313, 320; 343 NW2d 532 (1983). In contrast, venue rules have been described variously as (1) ensuring "that proceedings are held in the most convenient forum," *Gross v General Motors Corp*, 448 Mich 147, 155; 528 NW2d 707 (1995), (2) relating to

---

[3] We note that the panel in *Nat'l Equipment Rental* discussed this issue in dicta and simply relied on *Garavaglia* and *Grand Trunk. Nat'l Equipment Rental, supra* at 425.

"the convenience of the litigants," *Grand Trunk,
supra* at 700 (quoting *Panhandle Eastern Pipe Line
Co v Federal Power Comm,* 324 US 635, 636; 65 S Ct
821; 89 L Ed 1241, 1242 [1945]), and (3) "primarily a
matter of convenience concerned with where the trial
of an action may occur," *Kerekes v Bowlds,* 179 Mich
App 805, 810; 446 NW2d 357 (1989). Although the
convenience of the parties is often the primary issue
in venue disputes, the Michigan Supreme Court has
recognized that the venue rules also address other
issues:

> Courts evaluate convenience primarily in terms of the
> interests of the parties and any relevant witnesses. How-
> ever, the primary goal is to minimize the costs of litigation
> not only by reducing the burdens on the parties, but also by
> considering the strains on the system as a whole. See *Piper
> Aircraft Co v Reyno,* 454 US 235, 256-257; 102 S Ct 252; 70 L
> Ed 2d 419 (1981); *Gulf Oil Corp v Gilbert,* 330 US 501, 507-
> 509; 67 S Ct 839; 91 L Ed 1055 (1947). [*Gross, supra* at
> 155.]

With this purpose in mind, we now turn to a review
of the statutes and court rules governing venue.

The Michigan Supreme Court has recognized that
the establishment of venue is within the Legislature's
power. *Coleman v Gurwin,* 443 Mich 59, 62; 503
NW2d 435 (1993) (citing *Barnard v Hinkley,* 10 Mich
458, 459 [1862]). The Legislature has passed several
general venue statutes, including those at issue here,
as well as MCL 600.1611; MSA 27A.1611, regarding
actions on probate bonds; MCL 600.1615; MSA
27A.1615, regarding actions against governmental
units; and MCL 600.1629; MSA 27A.1629, regarding
tort and products liability actions. The Legislature has
recently used its power to revise the venue statute for

tort actions, with the intent to discourage venue shopping by plaintiffs. MCL 600.1629;   MSA 27A.1629; *Gross, supra* at 157. The Legislature has also passed specific venue provisions regarding other actions. For instance, the statute governing child custody actions requires that "if the circuit court of this state does not have prior continuing jurisdiction over a child, the action shall be submitted to the circuit court of the county where the child resides or may be found." MCL 722.26(2);   MSA 25.312(6)(2).   This requirement serves to protect the best interests of children in child custody actions. *Kubiak v Steen*, 51 Mich App 408, 414; 215 NW2d 195 (1974).   Thus, it is clear that the Legislature has used its power to establish venue to serve interests beyond the convenience of the parties.

We note that venue is not governed solely by statute. The parties' choice of venue and motions for change of venue are matters of practice and procedure, which are primarily treated by court rule. See *Hoffman v Bos*, 56 Mich App 448, 454-455; 224 NW2d 107 (1974).   Where there is a conflict between a court rule and a statute, the court rule should prevail. *Id.* at 455. Pursuant to MCR 2.221,  objections to venue are waived if not raised in a timely manner.[4] *Huhn v DMI, Inc*, 207 Mich App 313, 319; 524 NW2d 254 (1994), remanded on other grounds 450 Mich 904 (1995).   In addition, a trial court, on its own motion, may order a change of venue where the venue of a civil action is improper. MCR 2.223.[5]

---

[4] This rule is consistent with the corresponding statute. MCL 600.1651; MSA 27A.1651.

[5] MCR 2.223 provides, in part:

In addition to statutes and court rules, we must also consider the applicable case law regarding venue. In this regard, there are at least two rules articulated in case law that are not found in the statutes or court rules. First, venue is determined at the time a suit is filed. *Kerekes, supra* at 808; *Brown v Hillsdale Co Rd Comm,* 126 Mich App 72, 76-78; 337 NW2d 318 (1983). Second, as noted above, Michigan courts have enforced agreements in which the parties stipulated a proper venue after a cause of action had arisen. *Garavaglia, supra* at 470; *Grand Trunk, supra* at 695, 700.

We decline to create a rule that allows parties to agree contractually to venue. Our decision is based on several considerations. First, we believe it would be improper to create such a rule on our own accord. The Legislature has established a rule that allows parties to consent to personal jurisdiction by contract. See MCL 600.701(3); MSA 27A.701(3), MCL 600.711(2); MSA 27A.711(2), MCL 600.745; MSA 27A.745. The Legislature has not established such a rule with regard to venue. As the Michigan Supreme Court has stated, a court "may not do on its own accord what the Legislature has seen fit not to do." *Farrington v Total Petroleum, Inc,* 442 Mich 201, 210; 501 NW2d 76 (1993).

---

If the venue of a civil action is improper, the court

(1) shall order a change of venue on timely motion of a defendant, or

(2) may order a change of venue on its own initiative with notice to the parties and opportunity for them to be heard on the venue question.

If venue is changed because the action was brought where venue was not proper, the action may be transferred only to a county in which venue would have been proper.

Second, allowing parties to avoid by contract the mandate of the statutory rules relating to venue would undermine the power of the Legislature. While the waiver provisions in the venue statutes[6] and court rules[7] give litigants some control regarding venue after a suit has been filed, we find no evidence that the Legislature intended to abandon its own power in favor of the parties' right to contract. To the contrary, the Legislature's continuing exercise of its power to establish venue is inconsistent with any suggestion that it has an intent to abandon that power. As noted above, the Legislature has used the venue rules to control venue shopping by plaintiffs in tort actions and to protect the best interests of children in child custody disputes. *Gross, supra* at 157-159; *Kubiak, supra* at 414; *Bert v Bert,* 154 Mich App 208, 213-214; 397 NW2d 270 (1986). We do not believe that the Legislature intended to allow parties to subvert its power in this area by avoiding the effect of the statutory venue provisions by the inclusion of venue provisions in private contracts.[8]

Third, enforcing contractual agreements regarding venue would conflict with our court rules. Specifically, allowing parties to agree to a venue that is improper under the applicable venue statute would conflict with MCR 2.223(A)(2), which would other-

---

[6] MCL 600.1651; MSA 27A.1651.

[7] MCR 2.221(C).

[8] For example, had the parties in *Bert* agreed to venue before the cause of action arose, the agreement clearly would not have been enforceable. There, the child moved out of state just before a child custody action was filed. The panel in *Bert* properly held that venue was improper in the child's former county of residence. The panel noted that such a finding was "necessary to safeguard the child's interests in having the action brought in the county of the child's residence." *Bert, supra* at 214.

wise permit a trial court to order a change of venue on its own motion.

The dissent concludes that we should enforce parties' venue agreements, relying on a freedom of contract rationale. The dissent fails to recognize that the power to establish venue lies with the Legislature, *Coleman, supra* at 62, not the parties. In this regard, the right of freedom of contract does not compel the recognition of a private right to fix venue any more than it compels recognition of a private right to establish subject-matter jurisdiction.[9] The dissent offers no evidence that the Legislature intends to give up its venue powers. As we note above, the evidence is to the contrary. We do not believe that this Court may properly cede the Legislature's venue powers to litigants. If the Legislature wishes to give up this power, it is perfectly capable of doing so.

For the foregoing reasons, we conclude that contractual venue provisions are not binding on Michigan courts.[10] For the same reasons, we conclude that such agreements do not constitute a waiver of a party's right to challenge venue, nor do they constitute a consent to a change of venue. There is no provision for contractual waiver or consent in the statutes or the court rules. In fact, the only ground for finding a waiver pursuant to the court rules is the failure to object in a timely manner. MCR 2.221. The court

---

[9] Parties may not stipulate subject-matter jurisdiction. *Redding v Redding*, 214 Mich App 639, 643; 543 NW2d 75 (1995).

[10] We recognize that other jurisdictions have addressed similar issues with varying results. See, generally, anno: *Validity of contractual provision limiting place or court in which action may be brought,* 31 ALR 4th 404. However, because our holding in this case is controlled by the intent of the Michigan Legislature and by our construction of Michigan statutes and court rules, we do not find any of these cases persuasive.

rules only permit a court to order a change of venue "for the convenience of parties and witnesses or when an impartial trial cannot be had where the action is pending," MCR 2.222(A), or where venue is improper, MCR 2.223. We also note that enforcement of such agreements by construing them as a waiver or consent would effectively allow parties to circumvent the venue rules. As noted above, we find no evidence that the Legislature intended to allow parties to vary these rules contractually.

We believe that our conclusions can be harmonized with prior case law that suggests that courts will enforce agreements relating to venue that are made after a cause of action has arisen. See *Garavaglia, supra* at 470; *Grand Trunk, supra* at 695, 700. First, we note that these cases were decided before the Revised Judicature Act was passed and, therefore, dealt with a different statutory scheme. Second, it is significant that these cases did not address whether the venues that the parties agreed to were proper under the venue statutes then in effect. Third, these cases did not address the conflict between the Legislature's power to establish venue and the parties' right to contract. Finally, the cases did not expressly state that such contracts were always enforceable.

In *Garavaglia*, the defendant argued that the Ingham Circuit Court was without jurisdiction because the plaintiffs did not reside there. The Court did not discuss the defendant's venue argument, but dismissed both the jurisdiction and venue issues in a single sentence: "It is sufficient to say that, prior to the institution of the suit, the parties, in conference, agreed that, for the convenience of both the department and the taxpayer, the suit should be instituted

in Ingham county and that neither party would raise any question as to the jurisdiction of the court." *Garavaglia, supra* at 470. In *Grand Trunk*, the Court only enforced the parties' contracts concerning venue after it had found that the contracts were "fair and reasonable," were "made without fraud after a cause of action [had] accrued," and "would serve the convenience of both parties." *Grand Trunk, supra* at 699. We believe that *Garavaglia* and *Grand Trunk* are best understood as standing for the proposition that a trial court may consider a contract regarding venue to the extent that it is relevant to the factors that the court must consider in granting or denying a change of venue.[11]

In this case, the trial court denied defendants' motion for a change of venue without explaining its reasoning. However, it is clear from the record below that the trial court found the venue provision in the contract enforceable. To the extent it did so, the trial court erred. On remand, the trial court must consider defendants' motion in light of the statutes and court rules regarding venue. The trial court must decide

---

[11] The relevance of the contract will depend on the degree to which the original agreement addressed these factors and on the nature and extent of any changes in the parties' situations between the time the contract was signed and the time the suit is filed. An example may be helpful. A hypothetical contract might state: "The parties agree that X is a mutually convenient forum, and that both parties conduct business in X." Assuming a cause of action arose and was covered under the venue provisions of MCL 600.1621; MSA 27A.1621, such a contract would be essentially conclusive with respect to both the propriety and convenience of venue X on the day the contract was signed. Thus, in the absence of any other relevant considerations, a cause of action arising under that contract and filed on the day the contract was signed should proceed in venue X. However, the contract might be of little relevance with respect to these issues in an action filed years later, because the parties' circumstances might have changed.

whether Oakland County is a proper venue pursuant to either MCL 600.1621; MSA 27A.1621 or MCL 600.1605; MSA 27A.1605. The court may consider the parties' lease agreement only to the extent that it is relevant to the factors in those statutes. If venue in Oakland County is improper, the trial court shall order a change of venue to a county in which venue would have been proper. MCR 2.223(A). If the court determines that venue is proper in Oakland County, the suit may proceed there.[12]

Reversed and remanded. We do not retain jurisdiction.

NEFF, P.J., concurred.

TAYLOR, J. (*dissenting*). I respectfully dissent. The trial court's order denying defendants' motion to change venue from Oakland County to Saginaw County on the basis of the parties' agreement was proper. Neither the venue statutes nor the court rules prohibit courts from giving effect to the intent of the parties as expressed in the contract with regard to the choice of a particular venue. The preferable approach would be to enforce the forum selection clause in the contract unless a party could show that such enforcement would be unreasonable or that the provision was the product of fraud or overreaching. Such an approach embraces the modern view of forum selection clauses as set forth in the Restatement Conflict of Laws, 2d, § 80, p 244 (1988), and achieves the proper balance between the parties'

---

[12] Defendants' only objection to venue was that it was improper in Oakland County, and they requested only a change of venue pursuant to MCR 2.223. Thus, defendants have waived any challenge to venue under MCR 2.222.

interest in having their disputes resolved in a mutually agreeable forum and the state's interest in ensuring fairness in the plaintiff's selection of a venue.

The majority reasons that because contractual forum selection clauses designating a particular venue are not expressly permitted by the Legislature, such clauses must of necessity be prohibited. This reverses the proper order of things. The rule is that citizens can contract with respect to particular things unless the Legislature determines that contracts regarding such matters are contrary to public policy. The Legislature has not forbidden persons from agreeing to a specific venue for future disputes. The majority's approach cannot be reconciled with the fundamental principle that individuals are free to contract as they see fit in the absence of a specific statutory or constitutional prohibition.[1] Although the Legislature has seen fit to expressly permit individuals to contractually consent to personal jurisdiction, MCL 600.701(3); MSA 27A.701(3), MCL 600.711(2); MSA 27A.711(2), MCL 600.745; MSA 27A.745, it does not follow a fortiori from such express permission with regard to jurisdiction that contractual agreements with respect to venue are therefore not permitted. Had the Legislature intended to prohibit parties from contractually agreeing to venue in advance, it cer-

---

[1] See, e.g., *Dep't of Navy v Federal Labor Relations Authority*, 295 US App DC 239, 248; 962 F2d 48 (1992) [cited with approval in *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 319; 550 NW2d 228 (1996)]:

> Because of the fundamental policy of freedom of contract, the parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the Authority, the National Labor Relations Board or the courts to interfere with the parties' choice.

tainly could have done so, as demonstrated by the
statutes cited by the majority limiting a plaintiff's
choice of venue in probate and tort actions.[2] The Leg-
islature having imposed no such limitations with
regard to venue provisions, we should conclude that
there are none.

The majority contends that such agreements would
abrogate a court's authority with regard to venue
under the court rules; however, that is not the case.
The relevant question in a contract case is whether,
under the circumstances, a court should exercise its
authority with regard to venue to give effect to the
legitimate expectations of the parties as manifested in
their voluntary agreement regarding the particular
court in which certain actions must be brought. See
MCR 2.222(A)   and 2.223(A)(2);   *The Bremen v
Zapata Off-Shore Co*, 407 US 1, 9, 12; 92 S Ct 1907; 32
L Ed 2d 513 (1972);   Restatement, *supra.* There are
compelling reasons why a freely negotiated agree-
ment with respect to venue should be given full
effect.[3]

As the majority notes, "the primary goal [of statutes
and court rules establishing venue] is to minimize the
costs of litigation not only by reducing the burdens
on the parties, but also by considering the strains on
the system as a whole." *Gross v General Motors Corp*,
448 Mich 147, 155; 528 NW2d 707 (1995).   Yet, the
majority's decision moves the law in just the opposite

---

[2] Such limitations are justified in view of the fact that parties in such
cases generally do not have either the opportunity or the capacity to nego-
tiate and agree in advance to the most convenient venue.

[3] It should be noted in advance that the analysis would be different in a
situation where the parties to the contract were not on an equal bargain-
ing basis or the terms were not subject to negotiation, such as in a con-
tract of adhesion.

direction. It increases the costs of litigation and burdens on the parties, at least as the parties themselves saw the matter as reflected in their contract. The lease in this case expressly provided that the jurisdiction, choice of law, and venue provisions were specifically negotiated terms. Thus, it must be concluded that the parties took the venue provisions into account when determining the other terms of the lease. The reduced burden on plaintiff as a result of the parties' agreement with regard to venue was presumably reflected in the amount of the lease payments. The majority has not only rewritten the express terms of the contract at issue, but has utterly failed to support its claim that the enforcement of forum selection clauses, such as the one at issue, will result in a strain on the judicial system. On the contrary, enforcing such provisions would encourage certainty in contracting and reduce the cost of litigation by enabling the parties to avoid venue disputes in advance. Thus, employing the modern view that supports enforcement of such provisions will further the goals of the Legislature and the courts by reducing the burden on the parties and the strains on the legal system.

As the majority correctly recognizes, statutes and court rules relating to venue are procedural in nature and are primarily concerned with the convenience of the litigants. MCR 2.222(A);   *Gross, supra* at 155; *Kerekes v Bowlds*, 179 Mich App 805, 810; 446 NW2d 357 (1989);   77 Am Jur 2d, Venue, § 47, pp 654-655. "[V]enue is simply the location of trial, and its determination should only concern the selection of a fair and convenient location where the merits of a dispute can be adjudicated." *Gross, supra* at 156. There is

simply no reason why parties should not be able to stipulate in advance to the location of trial. Whatever inconvenience defendants would suffer as a result of being forced to litigate in Oakland County was clearly foreseeable at the time of contracting; both parties voluntarily decided that Oakland County would be an acceptable venue and, as discussed above, that decision formed an integral part of the contract. The majority offers no reasoning that would justify allowing defendants to avoid the consequences of their informed agreement. Although the majority fears that allowing such agreements might somehow "undermine the Legislature's power," it would do so no more than agreements with regard to jurisdiction. Furthermore, there is no reason to assume that the statutes cited by the majority that permit a party to consent contractually to personal jurisdiction were not also intended to permit a party to consent to personal jurisdiction *with regard to a particular court within the state*. MCL 600.745(2)(b); MSA 27A.745(2)(b) expressly directs courts to consider whether the forum chosen by the parties "is a reasonably convenient place for the trial of the action."

Federal courts, employing the modern view of forum selection clauses, have not distinguished between contractual provisions designating a particular court and those specifying a particular jurisdiction. See *The Bremen, supra* (upholding a forum selection clause stating that disputes were to be resolved in the High Court of Justice in London, England), *Carnival Cruise Lines, Inc v Shute*, 499 US 585, 591-593; 111 S Ct 1522; 113 L Ed 2d 622 (1991) (applying the holding in *The Bremen* to uphold a forum selection clause stating that disputes were to

be resolved in Florida courts), *Milk 'N' More, Inc v Beavert*, 963 F2d 1342 (CA 10, 1992) (applying the holding in *The Bremen* to uphold the portion of a forum selection clause stating that "venue shall be proper under this agreement in Johnson County, Kansas"), and Restatement Conflict of Laws, 2d, § 80, *supra* at 244 (discussing agreements concerning the place or court where the parties' disputes shall be resolved). This rationale makes sense when one considers that forum selection clauses regarding jurisdiction and those designating a particular venue differ only in regard to the specificity with which the parties identify the chosen forum. In either case, the same considerations arise when determining the enforceability of the contractual provision, e.g., whether the agreement is reasonable or the result of fraud or overreaching. *The Bremen, supra,* 407 US 10, 15; Restatement, *supra* at 244. Indeed, these are the same factors that courts have been directed to take into account when assessing the enforceability of agreements regarding jurisdiction. MCL 600.745(2)(c); MSA 27A.745(2)(c). It is this approach that achieves the proper balance, giving the parties the maximum amount of contractual freedom while ensuring that the state's interest in preserving fairness is respected. The majority's result not only seriously encroaches on freedom of contract but, as has been discussed, is counterproductive because it deprives parties of a valuable tool in reducing the cost of litigation.

Moreover, there is no principled excuse for distinguishing between those agreements that are reached after a cause of action arises and those that are negotiated in advance pursuant to a contract. In *Garavaglia v Dep't of Revenue*, 338 Mich 467, 470; 61 NW2d

612 (1953), our Supreme Court upheld an agreement
regarding venue that was entered into before suit was
filed but after the cause of action arose. If, as the
majority argues, venue is controlled exclusively by
statute and court rule and is fixed at the time suit is
filed, the agreement in that case should have been
held to be invalid, because according to statute venue
was properly laid elsewhere. *Id.* at 470. The majority
points to no authority or reasoning that would justify
different treatment for forum selection clauses on the
basis of whether the agreement was entered into
before or after the cause of action arose.

In every case in which Michigan courts have con-
sidered the question, the broader federal view has
been adopted. In *Grand Trunk W R Co v Boyd*, 321
Mich 693, 699-700; 33 NW2d 120 (1948), rev'd 338 US
263; 70 S Ct 26; 94 L Ed 55 (1949), our Supreme
Court adopted the modern view with regard to forum
selection clauses. However, consistent with the rea-
soning above, the decision was reversed by the
United States Supreme Court because the Federal
Employers Liability Act, 45 USC 56, expressly for-
bade such agreements as applied to claims under the
act. 388 US 265-266. Similarly, this Court adopted the
reasoning of *Nat'l Equipment Rental, Inc v Szukhent*,
375 US 311; 84 S Ct 411; 11 L Ed 2d 354 (1964), in
*Nat'l Equipment Rental, Inc v Miller*, 73 Mich App
421, 426; 251 NW2d 611 (1977). The fact that the fed-
eral approach was followed in both these cases and
in *Garavaglia, supra*, inescapably leads to the con-
clusion that the modern view of forum selection
clauses should form the basis for today's decision.

In my opinion, the trial court acted within its
authority when it found that venue was proper in

Oakland County on the basis of the parties' freely
negotiated agreement. For these reasons, I would
affirm the trial court's order denying defendants'
motion to change venue.